IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| JOSEPH MESSINA, | § § § | |
| Plaintiff, | § § | |
| v. | § § | 2:21-CV-01170-AMM |
| TITLEMAX OF ALABAMA, INC.; MVCONNECT, LLC; ALLSTAR RECOVERY, LLC, | § § § § § | |
| Defendants. | § | |

## DEFENDANTS' JOINT MOTION FOR SUMMARY JUDGMENT

Defendants TitleMax of Alabama, Inc. ("TitleMax"), MVConnect, LLC ("MVConnect"), and AllStar Recovery, LLC ("AllStar") (collectively "Defendants"), pursuant to Fed. R. Civ. P. 56, hereby jointly move this Court for summary judgment in their favor and against Plaintiff Joseph Messina ("Plaintiff") and show the Court as follows:

### I.   SUMMARY OF ARGUMENT

At base of Plaintiff's causes of action is the allegation that Defendants did not have a legal right to repossess the vehicle at issue. Indeed, each of Plaintiff's four causes of action hinges on the allegation that TitleMax, a proper security interest holder, lost its interest and ownership on the vehicle at issue. However, in this

motion, Defendants establish that TitleMax retained its security interest in the vehicle as a matter of law due to the previous owner's failure to redeem the vehicle and the third-party seller's failure to provide the requisite statutory notices prior to selling the vehicle to Plaintiff.

Despite Plaintiff's purchase from the seller, and through no apparent fault of Plaintiff's own, TitleMax retained its security interest in the vehicle.[1] As explained in more detail below, there are no genuine issues of material fact. Defendants had a legal right to recover the vehicle. Because at least one element of each of these causes of action requires TitleMax to not have had a legal right of possession to the vehicle, they should all be dismissed with prejudice as a matter of law. TitleMax was entitled to recover the vehicle under Alabama law.

## II.   SUMMARY JUDGMENT EVIDENCE

In support of their Joint Motion for Summary Judgment, the Defendants submit the following summary judgment evidence for the Court's consideration:

- **Exhibit A**: Declaration of Ansley Trapani. Exhibit A is an unsworn declaration made under the penalty of perjury pursuant to 28 U.S. Code § 1746. It authenticates records TitleMax made and maintained in the usual course of business.

- **Exhibit A-1**: Vehicle Title with TitleMax Lien (TitleMax_00068).

- **Exhibit A-2**: Previous Owner's Application (TitleMax_00008-10).

---

[1] While Defendants understand the nature of the predicament Plaintiff finds himself in, his claims are not actionable against the Defendants but are instead proper against another third-party.

- **Exhibit A-3**: Previous Owner's Certificate of Title for Vehicle (TitleMax_00021).

- **Exhibit A-4**: Loan Funds disbursed to Customer (TitleMax_00022).

- **Exhibit A-5**: Power of Attorney (TitleMax_00023).

- **Exhibit A-6**: Previous Owner's Pawn Ticket and Security Agreement (TitleMax_00050-56).

- **Exhibit A-7**: TitleMax Account History Notes for Previous Owner's Account (TitleMax_00066-67).

- **Exhibit B**: Bill of Sale produced by Plaintiff with his initial disclosures.

- **Exhibit C**: November 13, 2019 issue of *The Gadsden Times*. Exhibit C is self-authenticating under FRE 902(6).

- **Exhibit D**: December 4, 2019 issue of *The Gadsden Times*. Exhibit D is self-authenticating under FRE 902(6).

### III.   FACTUAL AND PROCEDURAL BACKGROUND

It is undisputed that on September 6, 2019,[2] the previous owner (herein the "Previous Owner") of a 2000 Jeep Cherokee, VIN 1J4FT48S3YL151496, (herein the "Vehicle") entered into a Pawn Ticket and Security Agreement with TitleMax ("Security Agreement"), whereby the Previous Owner agreed to grant TitleMax a security interest in the Vehicle in exchange for an agreed upon pawn sum. *See* Exhibits A-4, A-5, and A-6. It is also undisputed that, consistent with the terms of

---

[2] The September 6, 2019 Security Agreement was a refinance of several prior agreements, including substantially agreements entered into on or about, June 7th, July 6th, and August 6th of 2019.

3

the Security Agreement, TitleMax held a valid security interest on the title of the Vehicle. *See* Exhibit A-1.

The Security Agreement required, and the Previous Owner agreed, to make a payment to TitleMax on October 6, 2019. *See* Exhibit A-6 at §1.

The Security Agreement also states that failure to make timely payments is an event of default. *See* Exhibit A-6 at § 8. A remedy available upon default is repossession without judicial process. *See id.*

The Previous Owner ultimately failed to make the required October 6, 2019 payment, nor did they seek to refinance the pawn as they had done in the preceding months. *See* Exhibit A-5 (account history noting lack of payments or refinance following 9/6/2019 entries). As such, the Previous Owner's account was in default, and the explicit terms of the Security Agreement provided TitleMax had a right to recover the Vehicle. *See* Exhibit A at ¶ 4; Exhibit A-6 at § 8. Notably, the Previous Owner also failed to redeem the Vehicle within 30 days after default.

At some point in the time following the Previous Owner's default and failure to redeem, the Vehicle allegedly came into the possession of Buddy's Towing and Recovery ("Buddy's") in Gadsden, Alabama. *See* Plaintiff's Second Amended Complaint, ¶ 17, Dkt. No. 24. On December 18, 2019, unbeknownst to TitleMax, Plaintiff allegedly purchased the Vehicle from Buddy's. *See id.*

According to the records Plaintiff produced with his initial disclosures, Plaintiff purchased the Vehicle as an abandoned vehicle. *See* Exhibit B (noting it is an "Abandoned Motor Vehicle Bill of Sale" and "This form may only be used to transfer ownership of an abandoned motor vehicle sold pursuant to Title 32, Chapter 13, *Code of Alabama 1975*."). The Bill of Sale lists the information for the Vehicle's VIN, year, make, and model. *See id.* The Bill of Sale also states that the Notice of Sale was published on *The Gadsden Times*, the local newspaper, on November 13, 2019 and December 4, 2019.

*The Gadsden Times*, however, did **not** publish the Notice of Sale for the Vehicle on November 13, 2019 and December 4, 2019 as stated in the Bill of Sale. True and correct copies from the November 13, 2019 and December 4, 2019 issues of *The Gadsden Times* are attached as Exhibit C and Exhibit D, respectively. Though the issues are devoid of any mention of the Vehicle's pending sale, the classified sections specifically lack the statutorily required Notice of Sale for the Vehicle.[3]

The Bill of Sale also states that Notice of Termination was sent to the lienholder of record on November 13, 2018. *See* Ex. B. Yet, there is no evidence of the same.

On or about December 22, 2020, the Vehicle was set for repossession as a result of the Previous Owner's default. *See* Ex. A-7.

---

[3] Notably, there are numerous other, unrelated legal notices provided in those issues.

#184720804_v8

Plaintiff alleges that on July 31, 2021, Defendants took physical possession of the Vehicle in Birmingham, Alabama. *See* Plaintiff's Second Amended Complaint, Dkt. No. 24 at ¶ 22. Plaintiff also alleges that a police officer was dispatched to his location, who then investigated Plaintiff's claim and determined the Vehicle had been recovered by Defendants due to a security interest with the Previous Owner. *See id.* at ¶ 24. On August 2, 2021, Defendants returned the Vehicle to Plaintiff. *See id.* at ¶ 26.

Plaintiff filed suit on or about August 26, 2021. Since that time, the parties have exchanged initial disclosures. The Defendants have responded to the written discovery propounded by Plaintiff. On October 29, 2022, the Defendants propounded written discovery on Plaintiff. Plaintiff responded on March 3, 2023. An adequate time for discovery has been provided for this motion to be properly decided by the Court.

## IV.   ARGUMENTS AND AUTHORITIES

### A.   *Standard of Review*

Under Fed. R. Civ. P. 56, summary judgment "shall" be granted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). While the moving party bears the burden of establishing there are no "genuine dispute[s] as to any material fact," that burden may be met "by demonstrating that there is a lack of

evidence to support the essential elements that the non-moving party must prove at trial." *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

The party requesting summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings that it believes demonstrate the absence of a genuine issue of material fact. *Alabama Mun. Ins. Corp. v. Scottsdale Ins. Co.*, 297 F. Supp. 3d 1248, 1251 (N.D. Ala. 2017). Once the moving party has met its burden, Rule 56 requires the non-moving party to go beyond the pleadings and—by pointing to affidavits, or depositions, answers to interrogatories, and/or admissions on file—designate specific facts showing that there is a genuine issue for trial. *Amiri v. Bd. of Trustees of Univ. of Alabama*, 440 F. Supp. 3d 1267, 1271 (N.D. Ala. 2020). "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 249, 106 S.Ct. 2505. "Essentially, the inquiry is 'whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Id*. at 251-52; *see also, LaRoche v. Denny's, Inc.*, 62 F. Supp. 2d 1366, 1371 (S.D. Fla. 1999) ("The law is clear ... that suspicion, perception, opinion, and belief cannot be used to defeat a motion for summary judgment.").

The Northern District of Alabama has routinely granted motions for summary judgment where the only remaining issues were those of law, not fact. *See Medline Indus., Inc. v. Stryker Sustainability Sols., Inc.*, 541 F. Supp. 3d 1305 (N.D. Ala. 2021)(summary judgment granted after Court analyzed and decided legal implication of statutory text); *Carter v. Companion Life Ins. Co.*, 338 F.R.D. 413 (N.D. Ala. 2021); *Ala. Municipal Ins. Corp. v. Scottsdale Ins. Co.*, 297 F. Supp. 3d 1248 (N.D. Ala. 2017). As is the case here, it is clear Defendants had a present legal right to the Vehicle under Alabama Code 5-19A-6 and the Alabama Abandoned Motor Vehicle Act, and as such, Plaintiff's claims should be dismissed as a matter of law.

### B. *TitleMax Held a Valid Security Interest in the Vehicle*

As a matter of law, TitleMax held a valid security interest in the Vehicle at the time the Vehicle was recovered. As such, there are no fact issues that require submission to the jury. Instead, the crux of this case—whether Defendants possessed a legal right to the Vehicle at the time it was recovered—can be decided by this Court as a matter of law. Here, even assuming facts in a light most favorable to the non-movant, the applicable statutes are certain on this situation: Defendants did have a legal right to the Vehicle, and therefore summary judgment is proper.

Under Alabama Code 5-19A-6, for pledged goods, such as the Vehicle in this case, the pledgee has 30 days after default to redeem the pledged goods. However,

"pledged goods not redeemed within 30 days following the originally fixed maturity date shall be forfeited to the pawnbroker and ***absolute right, title, and interest in and to the goods shall vest in the pawnbroker.***" The Previous Owner did not redeem the Vehicle within 30 days after default. *See* Exhibit A-7 (noting the lack of redemption following default). That means, of course, that Vehicle was forfeited to TitleMax, and TitleMax had a legal right to take possession of the Vehicle.

To be sure, the Security Agreement explicitly granted TitleMax a security interest in the Vehicle. *See* Exhibit A-6 at §1. "[P]awn transactions in which a debtor consensually grants a pawnbroker a security interest in goods (including title documents and the vehicles they represent) are secured transactions...." *TitleMax of Alabama, Inc. v. Graham*, No. 1:21-CV-432-TFM-B, 2022 WL 4593091, at *4 (S.D. Ala. Sept. 29, 2022) (quoting *Harkness v. EZ Pawn Ala., Inc.*, 724 So. 2d 32, 33 (Ala. Civ. App. 1998). Once the Previous Owner was in default and failed to redeem the Vehicle, TitleMax's right to the Vehicle—stemming from its valid security interest—fully vested.

The Abandoned Motor Vehicle Act permits a person in possession of a motor vehicle that is considered "abandoned" to sell the abandoned motor vehicle so long as proper notice is given to previous owners or lienholders. *See* AL Code § 32-13-3. It is well-established that Alabama courts recognize that the sale of an individual's vehicle under the Alabama Abandoned Motor Vehicles Act directly affects a secured

party or lienholder's property interests in the vehicle. *See Global Fed. Credit Union v. Walker*, 679 So.2d 1075 (Ala. Civ. App. 1996). Consequently, secured parties and lienholders are entitled to notice of the sale before the sale occurs. *Id.*

The prerequisites for a valid sale are very specific, both regarding the content of the notices and the method for providing them.[4] Most importantly for the case at bar, notice ***must be given by publication once a week for two successive weeks in a newspaper of general circulation in the county in which the sale of the abandoned motor vehicle is to be held.*** *See* AL Code § 32-13-3(b)(1) (*emphasis added*).

Additionally, the first publication or posting ***must be at least 30 days before the date of the sale***. *See id.* (*emphasis added*). The result of a prospective seller's failure to properly provide notice is similarly unambiguous and resolute. Specifically, section 32-13-3(c)(3) states:

> (3) Notwithstanding any other provision in this section, **if the person or entity making the sale of the motor vehicle failed to provide proper notices** as required in subsection (d) of Section 32-8-84, or this chapter, **the sale of the abandoned vehicle shall be void** and the current owners, registrants, **secured parties, and lienholders of record**, if any, for the motor vehicle shall **retain their ownership, security interests, liens, and interests in the motor vehicle**.

---

[4] As to content, a prospective seller must provide notice of the actual sale (including date, time, and place) and a description of the motor vehicle to be sold (including the year, make, model, and vehicle identification number). *See* AL Code § 32-13-3(2).

10

Thus, in order to lawfully sell the Vehicle, Buddy's Towing needed to have complied with all proper notice requirements to TitleMax under Alabama law *prior* to the sale—which it failed to do.

As noted above, it is undisputed that TitleMax contracted with the Previous Owner of the Vehicle, wherein the Previous Owner pawned TitleMax the title to the Vehicle in exchange for short-term credit needs. This created a valid security interest. It is also undisputed that the Previous Owner defaulted on the pawn transaction with TitleMax. The Vehicle then ended up at Buddy's Towing and Recovery ("Buddy's Towing") in Gadsden, Alabama as an alleged "abandoned vehicle.[5]" Therefore, Buddy's Towing must have published its intent to sell the Vehicle at least by November 18, 2019—30 days before it sold the Vehicle to Plaintiff, and once a week for two successive weeks—in order to have given TitleMax proper notice of its intention to sell the Vehicle to Plaintiff.

Buddy's Recovery should have published the sale in a general circulation newspaper as required by Section 32-13-3(b). *The Gadsden Times*, where the Notice of Sale was allegedly published per the Bill of Sale, has a section dedicated entirely to posting intended sales of abandoned motor vehicles. A review of the November 13, 2019 and December 4, 2019 issues of *The Gadsden Times*' show that both are devoid of the alleged Notice of Sale of the Vehicle. *See* Ex. C and Ex. D. Therefore,

---

[5] The Vehicle was allegedly considered "abandoned" under § 32-13-1, Ala. Code (2019).

Buddy's Recovery failed to give proper notice to TitleMax of its intent to sale the Vehicle. As such, TitleMax, under Section 32-13-3(c)(3), retained its security interest in the Vehicle, and Defendants' repossession of the Vehicle from Plaintiff was neither unlawful nor wrongful.

Moreover, even if the notices were published in the newspaper as required, they were not published in two successive weeks. Yet another failure to comply with the requirements of the statute. *See* § 32-13-3(b)(1), Ala. Code.

The strict requirements of Section 32-13-3 are applied by an Alabama federal court in *In re Burnette*. Although a bankruptcy case, the court's reading of Section 32-13-3(c)(3) is instructive here. There, Ms. Reynolds' vehicle was recovered by Burnette from a shopping center parking lot after her grandson left it parked there for several days. *In re Burnette* No. 08-30772-DHW, 2008 WL 5045916, at *1 (Bankr. M.D. Ala. Sept. 26, 2008). Burnette owned a wrecker service, and testified he sent Ms. Reynolds a certified letter notifying her that he had possession of the car and also posted a notice for two weeks at the Montgomery County Courthouse prior to him selling Ms. Reynolds' vehicle at a public auction. *Id.* at 2. Burnette acknowledged he did not give notice of the sale by publication. *Id.* at 2.

The court held that "Burnette's act of selling Ms. Reynolds' automobile was wrongful because Burnette failed to comply with applicable Alabama law regarding abandoned vehicles." *Id.* at 3. Alabama law "authorizes a wrecker service having

12

lawful possession of an abandoned vehicle to sell the vehicle at auction." *Id.* Prior to any sale, however, the law "requires the wrecker service to provide notice of the sale to the record owner of the vehicle not only by certified mail" but, also, "by publication." *Id.* The court explained that "**[e]ven if Burnette gave the required certified mail notice to Ms. Reynolds as he claims, he did not publish the sale in a general circulation newspaper as required by the statute**." *Id*. (emphasis added). Thus, as detailed in the statute itself strict compliance with all notice requirements is required for the proper sale of abandoned vehicles.

C. *Plaintiff's Claims Hinge on Whether Defendants Had Legal Right to Recover Vehicle*

To be sure, in order for Plaintiff to recover on *any* of his claims, Defendants must not have had a legal right to recover the Vehicle. However, Defendants demonstrate they had a legal right to recover the Vehicle from Plaintiff—thereby affirmatively extinguishing all of Plaintiff's claims. Plaintiff's Second Amended Complaint asserts claims for negligence, wantonness, conversion, and violation of the Fair Debt Collection Practices Act ("FDCPA"). Dkt. 24 at ¶¶ 32-51.

| Cause of Action | Element (as stated in Plaintiff's Second Amended Complaint) that Plaintiff Cannot Meet |
|---|---|
| Negligence | Defendants were under a duty to implement reasonable procedures in ensuring cars *not encumbered by a valid security interest* were not repossessed. |

Case 2:21-cv-01170-AMM   Document 52   Filed 03/24/23   Page 14 of 17

| Wantonness | Defendants, with reckless disregard of the natural or probably consequences of its actions, acted in a manner that resulted in the *unlawful repossession* of the Vehicle. |
|---|---|
| Conversion | Defendants *did not have a present and immediate right of possession* of the Vehicle at the time of repossession. |
| FDCPA Violation | Defendant took non-judicial action to effect dispossession of the Vehicle *without a present right of possession* in violation of 15 U.S.C. § 1692f(6). |

All of Plaintiff's claims—negligence, wantonness, conversion, and violation of the FDCPA—are wholly dependent on whether Defendants had a legal right to recover the Vehicle from Plaintiff on July 31, 2021.

### i.     *Claim for Negligence*

For instance, in order to recover on his negligence cause of action, Plaintiff must demonstrate that Defendants had a legal duty to Plaintiff, breached that duty, and damages resulted from the breach. *See Hilyer v. Fortier*, 227 So. 3d 13, 22 (Ala. 2017) (explaining that to establish negligence, the plaintiff must prove: (1) a duty to a foreseeable plaintiff; (2) a breach of that duty; (3) proximate causation; and (4) damage or injury). Because TitleMax still had a valid security interest in the Vehicle, Defendants were entitled to recover the Vehicle and there can be no breach of the duty Plaintiff alleges.  As a result, Defendants owed no legal duty to Plaintiff, and no legal duty was breached.

### ii.     *Claim for Wantonness*

14

#184720804_v8

Plaintiff likewise cannot support his wantonness cause of action because Plaintiff cannot show a failure by Defendants to act, or that any of the Defendants acted, with reckless disregard toward Plaintiff. Wantonness requires proof of the conscious doing of some act or the omissions of some duty, while knowing of the existing conditions and being conscious that, from doing or omitting to do an act, injury will likely or probably result. *See Alfa Mut. Ins. Co. v. Roush*, 723 So. 2d 1250 (Ala. 1998). Here, none of the actions Plaintiff alleges resulted in an "unlawful repossession" by any one of the Defendants. Defendants simply reclaimed the Vehicle, as they were entitled to do under Alabama law. Therefore, as a matter of law, Plaintiff is unable to establish his wantonness claim and it should be dismissed from this case.

### iii.   *Claim for Conversion*

Plaintiff's conversion cause of action also fails because Defendants had a present right to possess the Vehicle. "The elements of conversion include a *wrongful taking* of specific property and an assumption of ownership or dominion over the separate and identifiable property of another." *McGee v. McGee*, 91 So. 3d 659, 667 (Ala. 2012). Hence, a claim for conversion cannot be sustained where, like here, the Defendant(s) had a legal right to possess the property in dispute. Therefore, because Plaintiff cannot prove the necessary elements to his conversion claim it should be dismissed.

### iv.  *Claim for Violation of Fair Debt Collection Practices Act*

Lastly, Plaintiff's FDCPA claim is without merit because, again, the claim is completely reliant on Defendants' alleged lack of a present right of possession. To prevail on an FDCPA claim, the plaintiff must establish the following elements: "(1) the plaintiff has been the object of collection activity arising from consumer debt, (2) the defendant is a debt collector as defined by the FDCPA, and (3) the defendant has engaged in an act or omission prohibited by the FDCPA." *Buckentin v. SunTrust Mortg. Corp.*, 928 F. Supp. 2d 1273, 1294 (N.D. Ala. 2013). Plaintiff alleges that Defendants MVConnect and AllStar took the Vehicle without a present right of possession in violation of 15 U.S.C. § 1692f(6). However, because TitleMax retained a legal right of possession to the Vehicle, the Vehicle was rightfully subject to recovery. Thus, Plaintiff is unable to prove the third element of his FDCPA claim. As such, Plaintiff's FDCPA claim, along with the rest of Plaintiff's claims, must fail and should be dismissed with prejudice.

## V.  CONCLUSION

Based on the foregoing reasons, and because there are no genuine issues of material facts, and Defendants are entitled to judgment as a matter of law, the Court should grant summary judgment in Defendants' favor and against Plaintiff.

WHEREFORE, Defendants TitleMax of Alabama, Inc., MVConnect, LLC, and AllStar Recovery, LLC jointly and respectfully request this Court to enter Summary Judgment, and such further relief as the Court deems just and proper.

Dated: March 24, 2023

**HOLLAND & KNIGHT LLP**

*/s/Martin E. Burke*
Martin E. Burke
State Bar No. ASB-1039-K72M
100 N. Tampa St., Suite 4100
Tampa, FL 33602
813-227-6704 (telephone)
813-229-0134 (facsimile)
martin.burke@hklaw.com

David D. Hornbeak
*Admitted Pro Hac Vice*
Texas State Bar No. 24106113
811 Main Street, Suite 2500
Houston, TX 77002
713-821-7000 (telephone)
713-821-7001 (facsimile)
david.hornbeak@hklaw.com

**COUNSEL FOR DEFENDANTS**

**CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the foregoing was served on all counsel of record in accordance with the Federal Rules of Civil Procedure on the Friday, March 24, 2023.

*/s/Martin E. Burke*
Martin E. Burke

#184720804_v8